UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANITRA MILLER | : |
| Plaintiff, | : JURY DEMANDED |
| v. | : |
| GEO SECURE SERVICES, LLC. | : No. |
| Defendant | : |

COMPLAINT

And now Plaintiff, Anitra Miller, by and through her undersigned counsel, files this Complaint alleging that her rights, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq*.; have been violated and avers as follows:

PARTIES

A. The Plaintiff

1.	Plaintiff, Anitra Miller ("Miller" or "Plaintiff") is an adult individual residing in Philadelphia County at 5248 Chandler Street, Philadelphia, PA 19139.

B. The Defendant

2.	Defendant, Geo Secure Services, LLC. d/b/a The Geo Group, Inc. ("GEO" or "Defendant") is a Florida limited liability corporation that operates the George W. Hill Correctional Facility in Delaware County at 500 Cheyney Road, Thornton, PA 19373.

3.	At all times, Defendant met the definition of "employer" under Title VII and the PHRA.

1

## JURISDICTION AND VENUE

4. This Complaint alleges discrimination on the basis of Miller's religion, and retaliation for complaints of religious discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("TITLE VII"), 42 U.S.C. § 2000d, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq*.

5. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

6. This Honorable Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

7. Additionally, pursuant to 28 U.S.C. §1367, this Court has Supplemental jurisdiction to hear all of Miller's claims arising under the Pennsylvania Human Rights Act ("PHRA").

8. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District.

## ADMINISTRATIVE PROCEEDINGS

9. On August 19, 2020, Miller filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 530-2020-04113, alleging retaliation and religious discrimination due to the actions of Defendant, and dual filed with the Pennsylvania Human Relations Commission ("PHRC").

10. Miller has been advised of her individual right to bring a civil action by receiving a Notice of Rights from the EEOC, dated February 24, 2021 (attached as "Exhibit A").

11. Miller has exhausted the administrative remedies available to her, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

## OPERATIVE FACTS

12. Miller is a practicing Muslim.

13. In accordance with Miller's religious beliefs, she wears a khimar headscarf.

14. Miller was hired by GEO on January 22, 2020 to work as a case manager at the George W. Hill Correctional facility.

15. On Miller's first day of training, Lieutenant Daniel Lowholt told Miller that she had to remove her khimar. Miller indicated that she would not remove her khimar because of its religious significance. Lieutenant Lowholt directed Miller to report to Lisa Riddle, of GEO's Human Resources department.

16. At Ms. Riddle's request, Miller provided GEO with a letter from Janji Muhammad, who is an advisor at the Masjid As-Sunnah An-Nabawiyyah mosque. In this letter, Mr. Muhammad indicated that Miller regularly attended the mosque and that "[o]ur attire requires women to wear a black head scarf with a covering over the body to not show silhouette."

17. Based upon Mr. Muhammad's letter, GEO granted Miller a religious accommodation and permitted her to wear a khimar while at work.

18. After completing her orientation period, Miller was assigned to provide case management services for the inmates who were housed within Unit 5.

19. At Unit 5, Miller was routinely harassed by her coworkers on account of her religion – primarily through the words and actions of Correctional Office ("CO") Markia Edwards.

20. For instance, CO Edwards frequently ridiculed Miller for wearing a khimar by mockingly referring to her as a "turtle" – which was a reference to the manner in which the khimar covered Miller's neck.

21. On occasion, when CO Edwards opened the security door so that Miller could enter Unit 5, CO Edwards would loudly shout, "opening the door for the turtle."

22. CO Edwards also frequently remarked in Miller's presence that she hoped that someone would snatch the khimar off of her.

23. CO Edwards' harassment of Miller was severe and pervasive.

24. CO Edwards began falsely accusing Miller of having sexual relationships with Muslim inmates.

25. After one Muslim inmate left Miller's office, CO Edwards loudly remarked, "yeah go back to your cell, get your penis sucked tomorrow."

26. Miller reported CO Edwards's behavior on multiple occasions.

27. On March 12, 2020 Miller complained about CO Edwards's discriminatory behavior to Chief Richard Leach and Senior Case Manager Gabrielle Price.

28. While Chief Leach promised Miller that he would speak to CO Edwards about her inappropriate behavior, her harassing conduct continued.

29. Frustrated by GEO's indifference to her complaints of harassment, Miller filed an incident report on April 30, 2020. In this incident report, Miller again recounted the manner in which CO Edwards was harassing her, and noted that she made previous complaints about CO

Edwards's behavior. Miller sent this incident report to Chief Leach, Ms. Price, and Assistant Facility Administrator James Mattera.

30. Shortly after Miller filed the incident report, CO Edwards falsely reported Miller of bringing a cell phone into her office and of smuggling food from the cafeteria to Muslim inmates.

31. Miller's coworkers also intentionally placed Miller in unsafe situations – such as by locking Miller in Unit 5 with inmates and without any correctional officers being present.

32. CO Edwards' allegations were investigated by Donald Bease. Mr. Bease searched Miller's office but was unable to find any cell phone.

32. On or about May 14, 2020 Miller met with Mr. Bease as part of his investigation. During this meeting Miller told Mr. Bease that while she once permitted an inmate to eat fries that had recently been thrown into the garbage can, that she never smuggled food from the cafeteria to any inmate.

33. On May 18, 2020 Miller reported to GEO's Ethics Hotline that she was being retaliated against for making a complaint about CO Edwards' religious discrimination.

34. GEO placed Miller on administrative leave on June 11, 2020.

35. While GEO never found evidence that Miller smuggled food for inmates or that Miller brought her cellphone into her office, GEO terminated Miller on June 14, 2020 for "violation of Company Policy."

36. GEO's explanation for Miller's termination is mere pretext because GEO actually terminated Miller for making complaints of religious discrimination and because GEO failed to discipline Miller's similarly-situated coworkers for more egregious violations of GEO's policies.

Moreoever, Miller's conduct of permitting an inmate to eat fries from a trashcan was not in violation of GEO's policies.

## CAUSES OF ACTION

### COUNT I
### TITLE VII - RELIGIOUS DISCRIMINATION
### 42 U.S.C.A. § 2000e-2(a)

37. Plaintiff incorporates the above paragraphs as if fully set forth at length herein.

38. Plaintiff's status as a Muslim places Plaintiff in the protected class of religion.

39. Plaintiff's membership in this protected class was a motivating factor Defendant's decision to terminate Plaintiff's employment.

40. Plaintiff suffered disparate treatment by Defendant, as set forth above.

41. As such, Defendant subjected Plaintiff to adverse employment action and caused an unlawful employment practice under 42 U.S.C. § 2000e-2(a).

42. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

43. As a result of the conduct of Defendant's management, Plaintiff demands punitive damages.

44. Plaintiff demands attorney's fees and court costs under the Section 704(a) of the Title VII, 42 U.S.C. §2000e-3(a), *et seq.*

### COUNT II
### TITLE VII - HARASSMENT

42 U.S.C.A. § 2000e-2(a)

45. Plaintiff incorporates all foregoing allegations as if they are stated in this Count in full.

46. Plaintiff had to endure pervasive and regular harassment from her supervisors and co-workers.

47. This harassment by Plaintiff's managers and co-workers detrimentally affected Plaintiff.

48. This harassment was motivated by Plaintiff's race.

49. The harassment by Plaintiff's supervisors would detrimentally affect a reasonable person for all of the reason stated herein, as the harassment and its results would cause decreased wages, pain, lost wages, and embarrassment and humiliation to a reasonable person.

50. The harassment of Plaintiff by Defendant's employees was willful and intentional.

51. Despite Plaintiff complaining about these issues to her supervisors, no meaningful remedial action was taken with respect to the harassment.

52. This willful, intentional, and unlawful harassment and discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C § 2000e, *et seq*.

COUNT III
TITLE VII - RETALIATION
42 U.S.C.A. § 2000e-2(a)

53. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

54. At set forth above, Plaintiff made complaints about religious discrimination and harassing conduct in workplace and as such, Plaintiff was engaged in protected activity under Title VII of the Civil Rights Act.

55. Defendant took adverse action against Plaintiff by terminating her employment.

56. As set forth above, Plaintiff's participation in protected activity was a motivating factor in Defendant's decision to terminate her employment.

57. As such, Defendant's decision to terminate Plaintiff's employment is a retaliatory action prohibited by the Civil Rights Act of 1964, §704(a).

58. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

59. As a result of the conduct of Defendant's management, Plaintiff demands punitive damages.

60. Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C. §2000e-3(a), *et seq.*, Plaintiff demands attorneys' fees and court costs.

### COUNT IV
### PENNSYLVANIA HUMAN RELATIONS ACT
### 43 P.S. § 951

61. Plaintiff incorporates all the preceding paragraphs as if they were set forth at length herein.

62. Based on the foregoing, Plaintiff alleges that Defendant violated the Pennsylvania Human Relations Act ("PHRA") by subjecting her to discrimination on the basis of her religion.

63. Plaintiff further alleges that Defendants violated the PHRA by retaliating against him for making complaints about unlawful discrimination and harassment.

64. Defendant's conduct caused Plaintiff to sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

65. Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* Plaintiff demands attorneys' fees and court costs.

**WHEREFORE,** Plaintiff, Anitra Miller, demands judgment in his favor and against Defendant, in an amount in excess of $150,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B. Punitive damages;

C. Attorneys' fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

                                      **LAW OFFICES OF ERIC A. SHORE, P.C.**

                                  BY: /s/ Brian M. Doyle (PA Id. 319475)
                                      **BRIAN M. DOYLE, ESQUIRE**
                                      Two Penn Center
                                      1500 JFK Boulevard, Suite 1240
                                      Philadelphia, PA 19102
Date: 4/8/2021                        Attorney for Plaintiff, Anitra Miller

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S § 4904, relating to unsworn falsification to authorities.

04/07/2021
_____
Date

Anitra Miller